Clifford Eaton
Plaintiff, pro se
Register No. 12878-074
Federal Correctional Institution
P.O. Box 1000
Otisville, NY 10963-1000

FILED

'13 JAN 14 PM 4:32

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Clifford Eaton,

      Plaintiff,

v.

Midland Funding, LLC and
Midland Credit Management, Inc.,

      Defendants.

'13 CV 0089 H NLS

Case No. _____

COMPLAINT

COMES NOW plaintiff, Clifford Eaton, pro se, and for his complaint against defendants, Midland Funding, LLC and Midland Credit Management, Inc., states and alleges as follows:

### INTRODUCTION

1.    This is an action to secure redress from unlawful credit and collection practices engaged in by the defendants. Plaintiff alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA") and the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").

### JURISDICTION AND VENUE

2.    The Court has jurisdiction over the parties to this case and the subject matter thereof pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k, and 28 U.S.C. § 1331.

3.    Venue in this district is proper because the defendants conduct business and have a physical presence within the

district.

## PARTIES

4. Plaintiff, Clifford Eaton ("Eaton"), is a natural person residing in Otisville, New York.

5. Defendant, Midland Funding, LLC ("Midland Funding"), is a limited liability company established under Delaware law, with its principal place of business located at 8875 Aero Drive, Suite 200, San Diego, California 92123.

6. Defendant, Midland Credit Management, Inc ("MCM"), is a corporation established under Kansas law, with its principal place of business located at 8875 Aero Drive, Suite 200, San Diego, California 92123.

## FACTS - GENERAL

7. Midland Funding is engaged in the business of purchasing or acquiring charged off consumer debts originating with other entities.

8. MCM is engaged in the business of collecting charged off consumer debts originally owed to other entities that have been purchased or acquired by Midland Funding.

9. Midland Funding and MCM are affiliates. Upon information and belief, they are under common ownership, management, and control.

10. Most of the debts that Midland Funding purchases or acquires, and which MCM attempts to collect, are delinquent credit card accounts formerly held by banks that were charged off months or years earlier.

11. Standard form credit card agreements used by most banks provide that the terms of the agreement can be changed from time

to time, and that changes beneficial to the consumer, such as a reduction in or waiver of interest, may be effected immediately and without notice.

12. "Charge off" means the credit card receivable is no longer carried on the bank's books as an asset. Under federal regulations, a bank must charge off a credit card receivable after it has been delinquent 180 days; it may charge it off sooner. See Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903 (June 12, 2000).

13. As a standard practice, most banks waive interest on credit card debts after charge off for as long as the debts continue to be held by the bank.

14. Prior to February 22, 2010 (when the regulation was amended), banks were required to issue periodic statements on an account until the bank "[deemed] it uncollectible," or instituted legal proceedings. 12 C.F.R. § 226(b)(2). The addition of interest could be construed as meaning the debt was not deemed uncollectible. See 26 C.F.R. § 1.6050P-1.

15. As amended, 12 C.F.R. § 226.5(b)(2) now requires banks to send periodic statements on all accounts, including defaulted accounts, for any period during which interest or fees are added to the account. 12 C.F.R. § 226.5(b)(2)(I). Banks generally prefer to waive the interest and save the expense of preparing and sending statements, once an account has been charged off.

16. Midland Funding and MCM regularly engage in a practice of adding interest to credit card debts after the assignor bank has waived interest. Specifically, interest is retroactively

added for the period of time between charge off by the bank and purchase or acquisition by Midland Funding.

17. Credit card issuers report the charge off amount to credit reporting agencies. Midland Funding and MCM subsequently report amounts that are higher and include retroactive interest. In both cases, the information is available to anyone who may see and use the credit reports, including the consumer and other creditors.

18. The retroactive addition of interest is improper. An assignee steps into the shoe of the assignor as of the date the assignor transfers the account and has no right to retroactively reverse the assignor's business decision to waive imposition of interest during a period of time when the assignee did not hold the account.

19. Midland Funding and MCM are furnishers of credit information as defined in the FCRA.

20. Midland Funding and MCM are debt collectors as defined in the FDCPA.

21. When Midland Funding and MCM report an account balance to credit reporting agencies that improperly includes retroactive interest, they are furnishing inaccurate, incomplete, false, and misleading information for inclusion in the particular consumer's credit history.

22. When Midland Funding and MCM attempt to collect consumer debts that improperly include retroactive interest, they are engaging in deceptive and unfair and unconscionable collection practices.

## FACTS RELATING TO PLAINTIFF

23. Eaton is a consumer as defined in the FCRA and the FDCPA.

24. Eaton allegedly incurred a consumer credit card debt with Target National Bank ("the debt").

25. In August 2010, Target National Bank charged off the debt as uncollectable, at which time the balance was approximately $721.00.

26. On or about June 23, 2012, Eaton obtained a copy of his credit report from Experian, a credit reporting agency.

27. On or about June 25, 2012, Eaton obtained a copy of his credit report from Trans Union, a credit reporting agency.

28. In reviewing his credit reports, Eaton found in each an account reported by Midland Funding for the debt, which Midland Funding began reporting on March 28, 2012, with a balance of $792.00.

29. Eaton submitted a request for investigation, commonly called a "dispute," to both Experian and Trans Union.

30. On or about June 29, 2012, Eaton sent a letter to Midland Funding requesting information about the debt, along with documentation verifying it.

31. On or about July 6, 2012, MCM sent a letter to Eaton proposing a settlement of the debt.

32. On or about July 13, 2012, Eaton sent a letter to MCM disputing the debt and requesting verification of same.

33. On or about July 13, 2012, MCM sent a letter to Eaton requesting additional information to research his dispute.

34. On or about July 18, 2012, Experian notified Eaton that Midland Funding verified the debt as accurately reported, and it would remain in his credit file.

35. On or about July 19, 2012, Trans Union notified Eaton that MCM verified the debt as accurately reported, and it would remain in his credit file.

36. On or about July 19, 2012, MCM sent a letter to Eaton stating he did not provide sufficient information for investigation of his dispute.

37. On or about July 23, 2012 and July 28, 2012, Eaton sent letters to MCM again detailing his dispute and requesting verification of the debt.

38. On or about July 30, 2012, MCM sent a letter to Eaton stating he did not provide sufficient information for investigation of his dispute.

39. On or about August 11, 2012, MCM sent a letter to Eaton requesting documentation to support his dispute.

40. On or about August 16, 2012 and October 5, 2012, MCM sent letters to Eaton proposing a settlement of the debt.

41. On or about December 3, 2012, Eaton sent a letter to MCM asking when the debt was purchased, the balance at time of purchase, and the amount of interest, if any, retroactively applied to the balance upon purchase.

42. On or about December 7, 2012, MCM sent a letter to Eaton stating it was instructing the three major credit reporting agencies to delete the debt from Eaton's credit files.

43. Neither Midland Funding nor MCM conducted a meaningful investigation of Eaton's disputes, nor did either provide any verification of the debt. However, they continued to furnish negative credit information and continued to engage in collection efforts, until such time as Eaton inquiried about the addition of retroactive interest to the debt.

## COUNT I - FAIR CREDIT REPORTING ACT

44. Eaton realleges and incorporates paragraphs 1-43 as if fully set forth herein.

45. Midland Funding and MCM violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct adequate investigations of the disputes Eaton submitted concerning the debt.

46. Midland Funding and MCM violated 15 U.S.C. § 1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigations, if any, of Eaton's disputes to credit reporting agencies.

47. Midland Funding and MCM violated 15 U.S.C. § 1681s-2(b)(1)(D) by failing to notify all credit reporting agencies that the debt reported for inclusion in Eaton's credit history was inaccurate, incomplete, misleading, and false.

48. The conduct of Midland Funding and MCM was willful, in that it was part of a policy, practice, and custom each company maintains.

49. As a direct and proximate result of the unlawful conduct of Midland Funding and MCM, Eaton has suffered damages, including damage to credit score and credit reputation, harrassment, humiliation, emotional distress, and financial loss.

WHEREFORE, Eaton respectfully moves for Judgment in his favor and the following:

A. Actual damages in an amount to be determined at trial, but no less than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or, in the alternative, 15 U.S.C. § 1681o(a)(1);

B. Punitive damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n(a)(2);

C. Attorney's fees and costs incurred pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and

D. Any further relief the Court may deem just, equitable, and proper.

### COUNT II - FAIR DEBT COLLECTIONS PRACTICES ACT

50. Eaton realleges and incorporates paragraphs 1-43 as if fully set forth herein.

51. By adding unauthorized interest to the debt it attempted to collect from Eaton, Midland Funding and MCM engaged in a deceptive collection practice, in violation of 15 U.S.C. §§ 1692e(2)(A) and 1692e(10).

52. By adding unauthorized interest to the debt it attempted to collect from Eaton, Midland Funding and MCM engaged in an unfair and unconscionable collection practice, in violation of 15 U.S.C. § 1692f(1).

53. By communicating credit information about Eaton which was known, or should have been know, to be false, Midland Funding and MCM violated 15 U.S.C. § 1692e(8).

54. By failing to cease collection efforts after receiving notice that Eaton disputed the debt, Midland Funding and MCM violated 15 U.S.C. § 1692g(b).

55. As a direct and proximate result of the unlawful conduct by Midland Funding and MCM, Eaton has suffered damages, including to credit score and credit reputation, harrassment, humiliation, emotional distress, and financial loss.

WHEREFORE, Eaton respectfully moves for Judgment in his favor and the following:

A. Actual damages in an amount determined at trial pursuant to 15 U.S.C. § 1692k(a)(1);

B. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(3);

C. Attorney's fees and costs incurred pursuant to 15 U.S.C. § 1692k(a)(3); and

D. Any further relief the Court may deem just, equitable, and proper.

Date: Jan. 8, 2013

_____
Clifford Eaton
Plaintiff, pro se